JUDGE KATHLEEN CARDONE

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 SEP -2  PM 12: 02
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | |
|---|---|
| PAOLA DOMINGUEZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | EP22CV0308 |
| § | |
| NATIONAL INDIVIDUAL INSURANCE § | |
| AGENCY, LLC a Texas Limited Liability § | |
| Company § | |
| § | |
| Defendants. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.  The Plaintiff is PAOLA DOMINGUEZ ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.  Defendant NATIONAL INDIVIDUAL INSURANCE AGENCY, LLC. ("National") is a corporation organized and existing under the laws of Texas and can be served via registered CT Corporation System, 1999 Bryan Street, STE 900, Dallas, Texas 75201.

### JURISDICTION AND VENUE

3.  Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

4.  Personal Jurisdiction. This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas

1

residents, and they sell goods and services to Texas residents, including the Plaintiff.

5.     Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when she received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

6.     This Court has venue over the defendant because the calls at issue were sent by or on behalf of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

7.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by

rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

agreement be executed as a condition of purchasing any good or service.

16. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## OVERVIEW OF THE TEXT MESSAGING MARKETING INDUSTRY

20. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative

technologies through which to send bulk solicitations cheaply.

21. One of the newest types of such marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120-500 characters.

22. An "SMS message" is a text directed to a wireless device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

23. The open rate for SMS messages exceeds 99%, and 90% of those messages are read within three minutes. Conversely, the open rate for an email in the finance industry is 21.56%.

24. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message or call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

25. Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six-digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services as television program voting or more benevolent uses, such as making charitable donations.

26. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

27. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon &*

*Schuster, Inc.*, 569 F .3d 949 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

28. Plaintiff has been on the National Do-Not-Call Registry since January 16, 2022 and was on the National Do Not Call Registry at all times relevant to this Complaint.

29. On June 16, 2022, at 12:26 PM Defendant sent Plaintiff an unsolicited automated text message soliciting Plaintiff to call (888) 263-2317 and purchase a "Health Plan Before June 30." Exhibit A.

30. On July 20, 2022, at 2:23 PM Defendant sent Plaintiff another unwanted automated text message soliciting Plaintiff to call (877) 328-1105 and purchase a "Health Plan By July 31." Exhibit B.

31. On August 15, 2022, at 1:05 PM Defendant sent Plaintiff the last unwanted automated text message soliciting Plaintiff to call (877) 388-1706 and purchase a "Health Plan Before August 31." Exhibit C.

32. On August 15, 2022, at 1:41 PM Plaintiff called (877) 328-1105 to sign up for a policy to unveil the sender's identity. Plaintiff spoke to a representative who identified himself as "Nick." Phone number (877) 328-1105 is one of the phone numbers listed as a call back number in the text messages received by Plaintiff from Defendant.

33. Nick solicited Plaintiff for health insurance from Defendant.

34. Plaintiff purchased an insurance policy from Defendant as a direct and approximate cause of the phone call Plaintiff made to Defendant as stated in ¶32.

35. Plaintiff was charged $263.40 to her credit card.

36. Plaintiff checked her billing statement and the charge displayed as HEALTHPROGRAM888825429 800-3234057 TX.

37. On August 16, 2022, Plaintiff was sent a welcome email from Defendant's email address support@plansassistgrp.com. This was a "welcome" email confirming Plaintiff's enrollment in their program and delivering Plaintiff's member ID number. Exhibit D.

38. Plaintiff clicked the "go to the Member Portal at https://benefitsportal.net/member/dashboard.php link and was directed to the website https://benefitsportal.net, a website owned and operated by Defendant. Exhibit E.

39. Table below displays calls made to Plaintiff by Defendant.

TABLE A

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 06/16/2022 | 12:26 PM | 69349 | TEXT MESSAGE |
| 2 | 07/20/2022 | 3:23 PM | 69349 | TEXT MESSAGE |
| 3 | 08/15/2022 | 1:05 PM | 69349 | TEXT MESSAGE |

40. Defendant initiated numerous automated unsolicited text messages and made unlawful telemarketing sales pitches about different insurance plan options.

41. Each and every text was placed while knowingly ignoring the national do-not-call registry. Each and every text was placed without training their agents/employees on the use of an internal do-not-call policy

42. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

43. No emergency necessitated the calls.

44. On information and belief, Defendant did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

**INJURY, HARM, DAMAGES, and ACTUAL DAMAGES**

## AS A RESULT OF THE CALLS

45. Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

46. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

47. Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

48. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

### Plaintiff's cell phone is a residential number

49. The calls were to Plaintiff's cellular phone which is Plaintiff's personal cell phone that she uses for personal, family, and household use. Plaintiff maintains no landline phones at her residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has her cell phone registered in her personal name, pays the cell phone from her personal accounts, and the phone is not primarily used for any business purpose.

### I.   FIRST CLAIM FOR RELIEF

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

50. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

51. Defendant called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls,

in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

52. Plaintiff was statutorily damaged at least three (3) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the telephone calls described above, in the amount of $500 per call.

53. Plaintiff is entitled to an award of up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

54. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

55. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

56. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

57. Plaintiff also seeks a permanent injunction prohibiting Defendant and its affiliates and

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

### III.   THIRD CLAIM FOR RELIEF

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**

58. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

59. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone numbers without his prior express written consent.

60. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

61. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

62. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

### IV.   FOURTH CLAIM FOR RELIEF

**Violations of The Texas Business and Commerce Code 305.053**

63. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

64. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute

multiple violations of the Texas Business and Commerce Code 305.053, by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone numbers without his prior express written consent in violation of 47 USC 227 et seq. Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

65. Plaintiff is entitled to an award of at least $500 in damages for each such violation. Texas Business and Commerce Code 305.053(b).

66. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Texas Business and Commerce Code 305.053(c).

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Paola Dominguez prays for judgment against Defendant as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1500 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for three (3) calls.

E. An award to Ms. Dominguez of damages, as allowed by law under the TCPA;

F. An award to Ms. Dominguez of interest, costs, and attorneys' fees, as allowed by law and equity

G.  Such further relief as the Court deems necessary, just, and proper.

Plaintiff hereby demands a jury trial for all claims that are so triable.

September 1, 2022                                    Respectfully submitted,

*[signature: Paola D.]*

Paola Dominguez
2316 Bill Howard Place
El Paso, TX  79936
Pdomin14@gmail.com
915-383-6911



PLAINTIFF'S EXHIBIT A

Text Message
Thu, Jun 16, 12:26 PM

Paola, Enroll In A Health Plan Before June 30th & You May Get Coverage Next Month. Call (888) 263-2317 Now
Rply STOP to stop



PLAINTIFF'S EXHIBIT B

Wed, Jul 20, 3:23 PM

Paola, Enroll In A Health Insurance Plan By July 31 & Lock-In Your Coverage. Call A Licensed Agent Now: (877) 328-1105
Rply STOP to stop



PLAINTIFF'S EXHIBIT C

Mon, Aug 15, 1:05 PM

Paola, Lock-In Your 2022 Health Plan Before August 31. Review Options With A Licensed Agent Now. Call (866) 388-1706

Rply STOP to stop

9/2/22, 10:15 AM



# M Gmail

**Fwd: Welcome Member!**

1 message

Fri, Sep 2, 2022 at 10:07 AM

From: **Customer Service** <support@planassistgrp.com> Date: Tue, Aug 16, 2022 at 11:09 AM
Subject: Welcome Member!
To: <pdomin14@gmail.com>

Congratulations: Paola!
Member ID: M5995371

Welcome to your PPO all access Network Policy and thank you for becoming a member with us!
Your Member Materials are available electronically on our secure online Member Portal immediately after you enroll .

*Please refer to the email from our Benefits Portal containing your Temporary Password*

Manage your billing, account information, and access Provider Search links. Your member portal is the roadmap to helping you maximize your benefits.

3 Easy Steps to Begin Managing Your Account

1. Go to the Member Portal at: https://benefitsportal.net/member/dashboard.php

2. Register using your member ID# located at the top of this email and the temporary password provided to you.



3. Login username and input the generated password then you may create a new password once you're logged in.

**BE ON THE LOOKOUT**

**Please Note:** You will receive your welcome packets in the mail within **10-14 business days** from your effective date!

We appreciate your business and providing you with outstanding customer service is our top priority. If you have any questions regarding your policy, your medications or how to access your temporary ID medical cards please call member services toll free number.
Contact Information
HEALTH ENROLLMENT CENTER for help regarding your Membership, call:
888-201-3454
M-TH : 11am-6pm / FRI 11am-5pm (Eastern Standard Time)

**Additional Prescription Benefits: Glic**Rx

```
Provided is a prescription card that saves
people up to 80% off generic & brand name
medications. For additional information and
to obtain an ID card, please be sure to check
your email and text message to download the
                    app today!
```

GLIC RX ACCESS CODE IS SRX120

*Member Services with a Smile .........*
*Health Enrollment Center*
888-201-3454

CONFIDENTIALITY / PRIVILEGE NOTICE: This transmission, including any attachments, is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential, non-public, proprietary, or otherwise protected from disclosure. The information contained in this transmission may also be protected

by attorney-client, legal or other privilege. Unauthorized reading, disseminating, distributing, disclosing, storing, printing, forwarding or copying of this email or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you have received this email in error, please notify the sender immediately by a "reply to sender only" message and immediately delete or destroy the original message and all copies from your system without reading, saving, printing, forwarding or using it in any manner. Unauthorized interception of an electronic transmission is a violation of Federal Criminal Law pursuant to 18 U.S. Code Section 2510, et seq.

MALWARE / VIRUS NOTICE: Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

--

**Health Enrollment Center**
**888-201-3454**
*Member Services with a Smile.....*

 Sender notified by
Mailtrack

https://mail.google.com/mail/u/0/?ik=e6a910518f&view=pt&search=all&permthid=thread-f%3A1742874703366140643%7Cmsg-f%3A1742874703366140643&simpl=msg-f%3A1742874703366140643&...  3/3



Sign in below using your credentials.

☐ Forgot Password?